

**07 CV 11386**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

                           Plaintiff,

            v.

LAWRENCE D. ISEN,

                           Defendant.

Civil Action No. ___

COMPLAINT

---

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### NATURE OF THE ACTION

1. This action involves defendant Lawrence Isen's violations of the antifraud and registration provisions of the Securities Act of 1933 from February through June 2003 (the "relevant period"). During that time, Isen published reports in his online newsletter, the *OTC Journal*, urging investors to purchase shares of SHEP Technologies, Inc. (SHEP), while simultaneously selling 90,000 shares of SHEP that he had received as compensation for his touts, without disclosing his sales to his readers. Although Isen indicated in each of his SHEP reports that he would specifically disclose his sales of SHEP shares, he repeatedly failed to disclose this highly material information to his readers. All of the SHEP shares Isen held were restricted, because Isen had received them from SHEP affiliates in unregistered transactions. Isen's sales of these restricted shares into the U.S. public market were unlawful because there was no

registration statement in effect with regard to his sales of those securities, and there were no valid exemptions to the registration requirements regarding those sales.

2. By virtue of his conduct, defendant Isen, directly or indirectly, has violated, and unless enjoined will continue to violate, Sections 5(a), 5(c), 17(a)(2), and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), 77q(a)(2), and 77q(a)(3)].

## JURISDICTION

3. This Court has jurisdiction of this action pursuant to Sections 20 and 22(a) of the Securities Act of 1933 [15 U.S.C. §§ 77t, 77v(a)].

4. Defendant, directly or indirectly, has made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the acts, practices, and courses of business alleged herein.

## DEFENDANT

5. **Lawrence D. Isen**, age 54, resides in San Diego, California. Isen is a financial newsletter writer. He and his wife are majority owners of MarketByte LLC, which is an internet marketing company whose sole purpose is to publish Isen's online financial newsletter, the *OTC Journal*, available on Isen's website, www.OTCJournal.com. Isen manages and controls MarketByte and the *OTC Journal*.

## OTHER RELEVANT ENTITY

6. **SHEP Technologies Inc.** is a public company with its headquarters in Vancouver, British Columbia. SHEP was formed in September 2002 through the reverse merger of privately-held SHEP Ltd. and Inside Holdings, Inc., a public shell company controlled by a group of four individuals. SHEP has a class of securities registered with the Commission pursuant to Section 12(g) of the Exchange Act, and its stock is quoted in the Pink Sheets under

the symbol "STLOF." SHEP's stock was quoted on the Over-the-Counter Bulletin Board ("OTCBB") during the relevant period.

## FACTUAL ALLEGATIONS

7. Defendant Isen, through MarketByte and the *OTC Journal*, publishes profiles and reports on public microcap companies whose securities typically trade on the OTCBB or the Pink Sheets. The microcap companies contract with MarketByte to publish the profiles and reports, and pay MarketByte in cash, company stock, or both. All cash or stock received by MarketByte pursuant to these contracts is either received directly by defendant Isen, or is paid into accounts (in the name of MarketByte or otherwise) controlled by Isen. *OTC Journal* readers can subscribe free of charge to the newsletter, and can view the *OTC Journal* either on its website, which is open to the general public, or through e-mails sent to subscribers. During the relevant period, the *OTC Journal* had approximately 1.2 million e-mail subscribers.

8. In or around early February 2003, Isen met with two individuals to negotiate an agreement whereby Isen would begin coverage of SHEP in his *OTC Journal*. The two individuals with whom Isen negotiated were part of a group of four individuals who were affiliates of SHEP and controlled a large percentage of SHEP's outstanding shares (the "Affiliates"). The two Affiliates acted on behalf of SHEP in negotiating the agreement with Isen.

9. On February 12, 2003, Isen executed a contract with SHEP on behalf of MarketByte, in which he agreed to provide coverage for SHEP in the *OTC Journal* newsletter for a six-month period, in exchange for $75,000 cash. In an oral side agreement, the two Affiliates agreed to transfer to Isen 100,000 SHEP shares as part of Isen's compensation for promoting SHEP in the *OTC Journal*.

10. On or around February 14, 2003, the two Affiliates transferred 50,000 SHEP shares each from their accounts at a Bermuda-based brokerage firm to Isen's MarketByte account at a brokerage firm in the United States. Isen received the 100,000 SHEP shares into his MarketByte brokerage account on or around that same day. The shares did not contain restrictive legends.

11. All of the 100,000 SHEP shares Isen received were restricted, however, because they came directly from the two Affiliates in a private transaction.

12. On February 21, 2003, Isen published his initial profile on SHEP in the *OTC Journal*. In the profile, Isen favorably reviewed SHEP's business concept, and counseled *OTC Journal* readers to buy SHEP shares, stating "[w]e also believe you must plan to participate in SHEP for at least two years if you hope to experience a once-in-a-lifetime gain." Isen disclosed in his initial SHEP report that MarketByte had received $75,000 and 100,000 SHEP shares as compensation for his coverage of SHEP.

13. Isen also stated in this initial report, and in each of his subsequent *OTC Journal* reports on SHEP, that he and MarketByte were "forbidden to own, buy, sell or otherwise trade stock for [their] own benefit in the companies who appear in the publication unless specifically disclosed in the newsletter" (the "Disclaimer"). However, Isen failed to disclose in his initial SHEP report that from February 18 through February 20, before he had published his first report on SHEP, he had already sold 30,000 of those 100,000 shares. He also failed to disclose that on February 21 -- the day of the first SHEP report -- he sold an additional 15,000 SHEP shares. Isen received a total gain of over $82,000 from his sale of the 45,000 SHEP shares from February 18 through February 21.

14. On February 26, 2003, Isen published his second favorable SHEP report, and thereafter, Isen published approximately nine additional positive reports on SHEP in his *OTC*

*Journal*, through September 3, 2003. In these reports, Isen often advised his readers to buy and hold SHEP shares. For example, in the *OTC Journal*'s February 26 report, Isen stated "[w]e believe every microcap investor should own some shares of SHEP Technologies." In the *OTC Journal*'s March 29 report, Isen stated,

> "[SHEP] is a must own for all microcap investors. Although early in the game, this company has technology which could end up as a key component in … nearly every motor vehicle manufactured world wide. If you want upside potential in a microcap, you won't find any story more exciting. In a few years this company could be a billion dollar royalty gusher."

During the time between the publication of his first and second reports about SHEP, Isen had sold an additional 6,000 SHEP shares for a gain of over $8,200, and had transferred 10,000 SHEP shares to some of his business associates. As of March 29, Isen held only 39,000 SHEP shares, yet he continued to disclose in his SHEP reports that he had received 100,000 SHEP shares, without disclosing that he had already sold more than half of his SHEP holdings.

15. Contrary to Isen's statement in the *OTC Journal*'s Disclaimer, Isen never disclosed any of his sales of SHEP stock in his reports on SHEP in the *OTC Journal*, but continued to disclose in each of his *OTC Journal* reports that he had received 100,000 SHEP shares as compensation. In doing so, Isen misled *OTC Journal* readers to believe that he continued to hold his 100,000 SHEP shares throughout the period of his SHEP reports, when, in reality, he had already sold more than half of his SHEP shares by March 29, and had sold or transferred all 100,000 shares of SHEP by June 12, 2003, reaping total profits of $103,302.48.

16. The information concerning Isen's sales of SHEP was material, and Isen knew or reasonably should have known that his failure to disclose his sales rendered the Disclaimer in his *OTC Journal* reports on SHEP false and misleading.

17. Isen also knew or reasonably should have known that his failure to disclose the material information concerning his SHEP sales, while he simultaneously urged *OTC Journal* readers to purchase SHEP shares, would operate to defraud and deceive investors into believing that Isen was continuing to hold his SHEP shares and that he believed that SHEP stock had the tremendous value that he claimed in his touts.

18. All of the 90,000 SHEP shares that Isen sold into the U.S. markets from February 18 through June 12, 2003 were restricted shares, as described in paragraph 11 above. Isen's sales of those shares were unlawful because those sales transactions were not registered, and there were no valid exemptions from registration for those sales.

## CLAIM ONE

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act

19. Paragraphs 1 through 18 are hereby realleged and incorporated by reference.

20. Defendant Isen, by engaging in the conduct described above, in the offer or sale of SHEP securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

   a. obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   b. engaged in transactions, practices, or courses of business which operated or would have operated as a fraud or deceit upon the purchaser.

21. By reason of the foregoing, defendant Isen violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## CLAIM TWO

### Violations of Sections 5(a) and 5(c) of the Securities Act

22. Paragraphs 1 through 18 are hereby realleged and incorporated by reference.

23. Defendant Isen, by engaging in the conduct described above, directly or indirectly, and without a registration statement in effect as to SHEP securities:

   a. made use of the means or instrument of transportation or communication in interstate commerce or of the mails to sell securities through the use or medium of any prospectus or otherwise;

   b. carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities for the purpose of sale or for delivery after sale; and

   c. made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise securities, without a registration statement having been filed as to those securities.

24. By reason of the foregoing, defendant Isen violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

**WHEREFORE,** Plaintiff Securities and Exchange Commission requests that the Court:

    i.    Enjoin defendant Isen from violating, directly, or indirectly, Sections 5(a), 5(c), 17(a)(2), and 17(a)(3) of the Securities Act;

    ii.    Order defendant Isen to account for and disgorge all proceeds he has obtained as a result of the illegal conduct described above, together with prejudgment interest;

    iii.    Order defendant Isen to pay civil penalties pursuant to Section 20(d) of the Securities Act; and

    iv.    Grant such other relief as this Court may deem just and proper.

Dated: December 19, 2007

Respectfully submitted,

_____
David Williams (Pro Hac Vice)
Mark A. Adler (MA-8703)
Antonia Chion
Yuri B. Zelinsky
Michael A. Ungar
Ivonia K. Slade
Scott F. Weisman

Attorneys for Plaintiff

SECURITIES AND EXCHANGE COMMISSION
100 F Street, NE
Washington, DC 20549
Tel: 202-551-4548 (Williams)
Fax: 202-772-9362
Email: williamsdav@sec.gov